# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| LAMEEK JOHNS, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:19-cv-00409 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| J.S. LOVELL, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | Senior United States District Judge |

Plaintiff Lameek Johns, a Virginia inmate proceeding *pro se*, has filed a civil rights complaint against a number of defendants alleging claims of excessive force and a subsequent failure to treat his injuries. One of the defendants, Nurse Practitioner Ball, moves to dismiss or, in the alternative, for summary judgment. Both parties have relied on materials outside the pleadings in support of their respective positions, and because I consider those materials, I will evaluate the motion as a summary judgment motion. After review of the relevant portions of the record, I conclude that Ball is entitled to summary judgment in her favor.

## I. BACKGROUND

Johns alleges that on April 13, 2019, he suffered injuries as a result of "prison staff using malicious and sadistic force" against him during a cell extraction and his subsequent placement in ambulatory restraints. (Johns Decl. ¶ 2, Dkt. No 8-1.) His claims against Ball, a Nurse Practitioner at Red Onion, arise from his treatment afterward. Specifically, he contends that there were two occasions on which Ball was deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights. (Am. Compl. ¶¶ 113, 114, 141, Dkt. No. 7.)

On the first date, April 16, 2019, Johns avers that he was seen by Ball for his "eye injuries, facial injuries and other injuries . . . to his ribs, back, and ankle, but was not provided any other treatment other than eye drops and x-rays." (Johns Decl. ¶ 6, Dkt. No. 8-1.) Largely

consistent with this, the medical records reflect that Ball examined Johns on that date, noting bruising of his right eye-orbit, "conjunctiva to right pupil, reddened, no drainage." She ordered x-rays of his facial bones, left ribs, PA (*i.e.*, posteroanterior) chest, left ankle, and both sides of his jaw. She prescribed him artificial tears twice daily for 30 days, ice twice daily for four days, and a follow up with medical. She noted that he was on Naproxen for pain and she added him to an Optometrist list to have his right eye evaluated. (Bledsoe Aff. ¶ 7 (quoting medical records).)

On April 26, 2019, all of the ordered x-rays were taken and none showed any fracture or dislocation. The rib x-rays did not show any rib fracture, rib lesion, or subcutaneous emphysema. Basically, all of his x-rays were normal and unremarkable. (Bledsoe Aff. ¶¶ 8–12.)

Thereafter, Johns remained on the list to be seen by an optometrist, and he was provided treatment for his eyes (in the form of being assessed, given new or renewed eye drops/artificial tears, or being given glasses) on a number of dates: April 29, May 16, May 29, June 12, and June 21. (*Id.* ¶¶ 14, 17, 22, 23.) He also was seen by an optometrist on June 25, 2019, and given a prescription for eye drops at that time. (*Id.* ¶ 27.)

As to the second date on which Johns says Ball failed to treat him—May 21, 2019—he avers that he was seen by her, but that after she examined his ankles, she refused to treat his injuries or to refer him to a qualified institutional doctor to assess and treat him. (Johns Decl. ¶ 18, Dkt. No. 8-1.) The medical records reflect that, the day before, he had complained during sick call that his meds were not working. He had also filed an "emergency grievance" in which he stated that, as a result of his April 13, 2019 placement in ambulatory restraints,

> I have been suffering from excruciating pain in my ribs, back, and ankles and the possibility of nerve damage in my right hand. I was seen by the Nurse for sick call on 5/08/2019 but have not been seen by the Nurse Practitioner or Institutional Doctor yet. The pain has become unbearable.

2

(Dkt. No. 18-1, at 15.) Staff responded that his complaint did not constitute an "emergency" and reminded him that he was receiving 325 mg of Tylenol for pain, twice daily, and he was on Nurse Practitioner Ball's list to be seen. (*Id.*; Bledsoe Decl. ¶¶ 18–19.)

The medical records describe the following as to Ball's May 21, 2019 examination of Johns:

> [A]t approximately 10:18 a.m., offender complained of pain in wrists, ankles and lower back. Reports pain not controlled. O; O x3. Respiratory even, lungs clear A/P, RRR, bilateral wrists no edema pp2t, NV intact, bilateral ankles, no edema, pp2t. NV intact. Offender did not exhibit any problems bending over, flexion/extension of back. FNP encouraged offender to "stay out of cell window" so that the nursing staff could give him his pain medicine each time that it was ordered.[1] Offender immediately became uncooperative with a loud voice cursing with the use of "fuck you." Correctional Officers took offender back to his cell and after the door shut, offender started saying/yelling multiple times, "Fuck you bitch," "I will sue you," etc. Intel K. Counts notified of occurrence in pod of C-building. Correctional officer Brown, correctional officer Belcher, correctional officer Gibson, correctional officer Ramey, and nurse A. Mullins were present. DC Flomax. Recent x-ray results reviewed, Follow-up prn.

(Bledsoe Decl. ¶ 20, Dkt. No. 19-1.)

Johns does not dispute that the examination as described in the records occurred, which included medical observations by Ball as to Johns' wrists, ankles, and back. Nor does Johns dispute that, despite his subjective reports of uncontrolled pain, neither his prior x-rays nor the examination on May 21 by Ball suggested that additional treatment was needed or required.

Because Johns had not previously complained about pain in his right hand, there was no prior x-ray of his wrist or hand. But Ball's examination of Johns' wrists did not reveal anything

---

[1] According to an "emergency grievance" that Johns submitted after Ball saw him, Ball's comment was intended to "imply" that he had been up in his cell window masturbating when the nurses brought him his medication. His grievance also stated that he had been "diagnosed with a mental condition for masturbating [and] exposing [his] genitals" and that Ball should not be saying anything about his "mental health." (Dkt. No. 18-1 at 17.) A failure to receive and take his pain medication, however, could obviously impact his levels of physical pain.

3

to suggest that an x-ray or other treatment was needed. Moreover, it appears that neither Johns' wrists nor his hands continued to cause him pain, as he had stated in his May 20 request for care. Indeed, his medical records reflect that over the next three months, Johns had a number of interactions with medical personnel and received treatment on a number of occasions. He did not complain about continued pain in his hand during any of these visits. (*See* Bledsoe Decl. ¶¶ 20–31.)

II. ANALYSIS

**A. Motion for Summary Judgment**

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, I must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party," *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

## B. Eighth Amendment

"It is beyond debate that a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). To demonstrate deliberate indifference, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Id.* at 356–57. The first component is an objective inquiry and the second is subjective. *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017). The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994). "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).

Ball asserts that none of Johns' complaints are sufficiently serious so as to qualify as an objectively serious medical condition. But I need not resolve that issue because, even if they were considered objectively serious medical needs, the record evidence clearly demonstrates that Ball provided Johns with treatment for those medical issues of which she had actual knowledge. With regard to his alleged eye injuries, he admits that he received eye drops and it is undisputed that Nurse Ball placed him on a list to be seen by an eye doctor specialist. He also received continuing treatment and monitoring, including changing of the type of eye drops. With regard to allegations of injuries and resulting pain to Johns' ribs, ankles, and face, Ball immediately ordered x-rays, all of which were negative. The first time Johns complained about his wrists

5

hurting and possible nerve damages to his hand (which occurred more than a month after the cell extraction that resulted in his alleged injuries), he was examined the next day by Ball. Her exam did not reveal anything warranting further treatment. Moreover, as noted, the medical records show that he did not voice any complaints about problems with his wrist or hand in the following three months.

There was no objective medical evidence, only Johns' complaints of pain, that would have led Ball to believe Johns was suffering from a serious medical need that was not being sufficiently treated.[2] Indeed, all medical evidence, including x-ray results and her own assessments and observations, were to the contrary.

Johns disagrees with the treatment he received, contends that it was insufficient, and questions Ball's competency to provide adequate care, stating that Ball should have referred him "to an institutional Doctor qualified to assess plaintiff's condition." (Johns' Decl. ¶ 18, Dkt. No 8-1.) It is well established, however, that mere disagreement with a prescribed course of treatment is insufficient to establish an Eighth Amendment claim of deliberate indifference. *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (finding that a prisoner's claim "is essentially a disagreement between an inmate and a physician over the inmate's proper medical care, and we consistently have found such disagreements to fall short of showing deliberate

---

[2] In some factual circumstances, a failure to adequately treat pain can give rise an Eighth Amendment claim. In *Perry v. Meade*, 728 F. App'x 180, 182 (4th Cir. 2018), for example, the court reversed the district court's dismissal of a deliberate indifference claim. In doing so, it held that the plaintiff had stated facts sufficient to establish the subjective element of his claim where he alleged "that he repeatedly informed Defendants that the treatment plan was ineffective and that his bleeding and pain had worsened, but Defendants failed to change course." *Id.*; *see also De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) (explaining that, even if "defendants provided . . . *some* treatment . . ., it does not follow that [defendants] have necessarily provided *constitutionally adequate* treatment"). In this case, though, Ball is not accused of failing to treat any subsequent pain on any later date. Moreover, although Johns now claims that he continued to have wrist pain and that as of July 2, 2019 he "suffers from no feeling in his right hand," (Am. Compl. ¶ 101, Dkt. No. 1), his medical records do not indicate that he voiced any complaints about that wrist pain in the three months after Ball treated him on May 21. He has not shown deliberate indifference by Ball.

6

indifference"). If a medical provider has a legitimate medical reason for a certain course of treatment, an inmate's disagreement with the treatment is not sufficient to succeed on an Eighth Amendment claim. *Rush v. Vandevander*, Civil Action No. 7:08CV00053, 2008 WL 495651, at *2 (W.D. Va. Feb. 21, 2008) (citing *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)); *see also Taylor v. Barnett*, 105 F. Supp. 2d 483, 488 (E.D. Va. 2000).

Likewise, a complaint about the results obtained does not equate to deliberate indifference, even if the medical provider was negligent. *Goodman v. Runion*, 676 F. App'x 156, 160 (4th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). So, for example, Johns argues that the eye drops and pain medication were ineffective, but that does not mean that his complaints were ignored by Ball. *See id.* Instead, to state a constitutional claim, Ball's disregard of Johns' serious medical needs must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Milter v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994). No reasonable jury could conclude that Balls' treatment of Johns could satisfy that standard.

In short, the medical records, as summarized by Nurse Bledsoe, as well as some of Johns' owns concessions, establish that Ball was not deliberately indifferent to him. She ordered various x-rays, prescribed him pain medications and eye drops, referred him to an outside optometrist, and ensured follow-up appointments with the medical department. Moreover, his medical records reflect continued treatment for his alleged eye injuries, evaluation for his complaints of pain for other areas of his body, and some medicine prescribed for pain. In light of this specific and substantial evidence, Johns' conclusory assertions that Ball failed or refused to

7

treat him do not create a material issue of fact as to whether there was reckless indifference by Ball. Therefore, defendant Ball is entitled to summary judgment.

### III. CONCLUSION

For the reasons explained above, I will grant Ball's motion for summary judgment. An appropriate order will be entered.

**ENTER**: This 31st day of January 2020.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE