IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LAMEEK JOHNS, ) | |
| ) | |
|     Plaintiff, ) | Civil Action No. 7:19-cv-00409 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| J.S. LOVELL, et al., ) | By:   Hon. Thomas T. Cullen |
| ) |          United States District Judge |
|     Defendants. ) | |

Plaintiff Lameek Johns, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 alleging excessive force, cruel and unusual living conditions, and deficient medical treatment claims arising from an incident that occurred on April 13, 2019, at Red Onion State Prison ("Red Onion"). Several defendants[1] moved for summary judgment, arguing that Johns had failed to exhaust his administrative remedies before filing suit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) (2002). (ECF Nos. 38, 39.) On September 11, 2020, the court denied the motion for summary judgment, finding that material disputes of fact regarding "whether Johns failed to exhaust his available remedies" precluded entry of judgment.[2] (ECF Nos. 58, 59.) The court then referred the matter to United States Magistrate Judge Robert S. Ballou under 28 U.S.C. § 636(b)(1)(B) for an evidentiary hearing and preparation of a Report and Recommendation on the exhaustion

---

[1] The moving defendants were: J.S. Lovell, Z.M. Mannon, K.L. Eldridge, C. Gilbert, C. Messer B. Mullins, Hubbard, Clevinger, B. Phillips, A. Deel, Heckford, Sargent, Amburgey, Cole, and Bray (collectively "Defendants"). The other defendant, Nurse Ball, filed a motion to dismiss, which the court granted on January 31, 2020. (ECF No. 51.)

[2] This matter was originally assigned to Senior United States District Judge Norman K. Moon but was transferred to this court on September 18, 2020. (ECF No. 61.)

issues. (*See* ECF No. 63.)

Following an evidentiary hearing on January 11, 2021, Magistrate Judge Ballou concluded that Johns had failed to exhaust his available administrative remedies and recommended that the court dismiss the case. (ECF No. 88.) Johns filed timely objections to the Magistrate Judge's findings. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C).[3]

As explained below, because Johns's objections are merely general objections to the entirety of the Report and Recommendation and because they simply rehash the same arguments made to the magistrate judge, he is not entitled to this court's *de novo* review. But even if the court were to reach the merits of Johns's objection, it is not persuaded by his argument. Accordingly, the court rejects his unsupported assertions and finds that Johns failed to exhaust his available administrative remedies. The court will therefore overrule Johns's objections and adopt the Report and Recommendation in its entirety.

## I.    STANDARD OF REVIEW

When a matter is referred to a magistrate judge for a Report and Recommendation under Federal Rule of Civil procedure 72(b), following receipt of the Report and Recommendation, the parties may "serve and file specific, written objections" to the magistrate judge's proposed findings and recommendations within 14 days. *See also* 28 U.S.C. § 636(b)(1)(C). An objecting party must file objections "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v.*

---

[3] On September 30, 2022, because no objections had been raised within 14 days as required by § 636(b)(1)(C), the court initially adopted the Report and Recommendation of Magistrate Judge Ballou and dismissed the action. (ECF No. 89.) But Johns subsequently filed a motion for extension of time to file objections to Judge Ballou's Report and Recommendation later that same day. As such, the court granted Johns's motion for extension of time to submit objections within 10 days of its October 19, 2022, order and reopened the case. (ECF No. 91.) Plaintiff timely submitted his objections on October 20, 2022. (ECF No. 92.)

*Midgette*, 478 F.3d 616, 622 (4th Cir. 2007), *cert denied*, 127 S. Ct. 3032 (2007). Once objections are filed, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1).

But this process comes with an important caveat: "[g]eneral objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72 and have the same effect as a failure to object, or as a waiver of such objection." *Moon v. BWX Techs., Inc.*, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010) (citing *Veney v. Astrue*, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008), aff'd, 498 F. App'x. 268 (4th Cir. 2012); *see also Thomas v. Arn*, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed."). Indeed, objections that only recite arguments previously raised before the magistrate judge are considered general objections to the entirety of the Report and Recommendation. See *Veney*, 539 F. Supp. 2d at 845. A plaintiff who reiterates his previously raised arguments will not be given "the second bite at the apple [ ]he seeks." *Id.* Instead, his brief will be reviewed under the clear error standard of review. *Id.* ("Any part of the magistrate judge's disposition that has not been properly objected to is reviewed for, at most, clear error.").

## II. DISCUSSION

### A. Johns's General Objections are Reviewed for Clear Error

In response to Judge Ballou's Report and Recommendation (ECF No. 88), Johns submitted a document titled "Plaintiff's Objections in Opposition to Magistrate Judge Report

& Recommendation of Evidentiary Hearing" (the "Objection"). (ECF No. 92.) In it, Johns objects to the following: (1) "the factfinding of the Magistrate Judge"; (2) "the legal conclusions of the Magistrate Judge"; and (3) "the Recommendation made by the Magistrate Judge that plaintiff Johns failed to exhaust his administrative remedies and for this action to be dismissed." (*Id.* at 1.)

In effect, Johns's principal argument is that the Report and Recommendation was "inconclusive and vague," because Johns contends he "conclusively provided" the documents necessary to "prove and show that he has made a good[-]faith effort to exhaust his administrative remedies," and that his efforts were "thwarted by the Grievance Department officials at Red Onion State Prison." (*Id.* at 2.) In support of his contention, Johns effectively restates his arguments in his initial complaint. (*See id.* at 2–11.) Johns contends, in conclusory fashion, that, "despite what the magistrate judge states . . . that plaintiff provides no evidence that any Red Onion officials or defendants frustrated his ability to exhaust his administrative remedies . . . plaintiff Johns does have evidence to show that his ability to exhaust his remedies was frustrated . . . ." (*Id.* at 11.)

It is therefore difficult for the court to discern the nature of Johns' objections to the Report and Recommendation, except to say that Johns disagrees with Judge Ballou's recommendation because he believes it was wrongly decided. It is true that Johns has somewhat stated the basis for his objection: his belief that the Report and Recommendation was "inconclusive and vague." (ECF No. 92 at 2.) But his supporting arguments are nothing more than recitations of the same arguments, which are supported by the same facts as those initially raised and analyzed by Judge Ballou. This type of argument falls squarely within the

ambit of a "general objection" based solely on the restatement of claims that have already been argued—and rejected—before the magistrate judge. *See Veney*, 539 F. Supp. 2d at 845 ("A general objection . . . fails to satisfy the requirements of Rule 72(b) and 28 U.S.C. § 636(b)(1)(C)"); *see also United States v. Midgette*, 478 F.3d at 621–22 ("Section 636(b)(1) does not countenance a form of generalize objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection . . . be specific and particularized."). Because Johns's objection amounts to a general objection, he is not entitled to *de novo* review.

In the case of a general objection to a magistrate judge's Report and Recommendation, the standard of review is *at least* clear error. *See Veney*, 539 F. Supp. 2d at 844; *see also* Fed. R. Civ. P. 72(b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (Advisory Committee Notes, 1983); *Thomas*, 474 U.S. at 149–52 ("Petitioner first argues that a failure to object waives only de novo review, and that the district judge must still review the magistrate's report under some lesser standard. However, § 636(b)(1)(C) simply does not provide for such review.").

## B. Procedural Requirements Under the PLRA and VDOC Policy

Setting aside the fundamental error underlying Johns's objection, at bottom, the question before the court is whether Johns properly exhausted his available administrative remedies prior to initiating this action.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, regardless of whether they meet federal standards; are plain, speedy, or effective; or even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

It follows that an inmate must follow the required procedural steps to exhaust his administrative remedies. *See Moore v. Bennette*, 517 F.3d 717, 725 & 729 (4th Cir. 2008); *Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

As is relevant here, the Virginia Department of Corrections' ("VDOC") Operating Procedure ("OP") 866.1 governs the Offender Grievance Procedure within all VDOC facilities, including Red Onion. (*See* Aff. of Jennifer Messer ¶ 4, Apr. 30, 2019 [ECF No. 39-1].) OP 866.1 details the grievance process by which offenders must resolve complaints, appeal

administrative decisions, and challenge the substance of procedures. The grievance process provides corrections staff a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. There is no dispute Johns's claims are subject to the well-established requirements of OP 866.1.

Prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to resolve his complaint informally. According to OP 866.1, the first stage of the informal complaint procedure is for the inmate to verbally communicate his concerns to staff. If the issue is not resolved or the inmate is not satisfied with the resolution, he generally must document his good-faith effort using an informal complaint form. Once an inmate files an informal complaint form, it is logged in VACORIS, the VDOC's computer-based offender information management system, and a receipt is issued to the inmate. Within 15 days of receipt of the informal complaint form, staff should respond to the informal complaint. If an inmate is not satisfied with the staff's response to the informal complaint, he may file a regular grievance. If the inmate is not given a response within 15 days of the logging of the informal complaint form, the inmate may file a regular grievance and he must attach the receipt of the informal complaint form to the grievance as documentation of his attempt to resolve the issue informally. The inmate is responsible for submitting the informal complaint in a timely manner to allow time for staff to respond within the time period allowed to file a regular grievance. (*See generally* Messer Aff. Encl. A.)

After an inmate exhausts the informal complaint process, the inmate may then file a regular grievance. A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day they are received. If the

grievance meets the criteria for acceptance, it is logged in VACORIS and receipt is issued to the inmate within two working days from the date the grievance is received. If the grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two working days of its receipt, along with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman within five calendar days of receipt. The Regional Ombudsman's review of the intake decision is the final level of review. (*See generally id.*)

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II, which is addressed by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance. The time limit for issuing a Level I response is 30 days, 20 days for a Level II response, and 20 days for a Level III response. Expiration of the time limit (including any authorized continuances) without issuance of a response at any stage of the process automatically qualifies the grievance for appeal. (*See generally id.*)

**C. Exhaustion Analysis**

The disposition of this case turns not only on whether Johns exhausted the full range of remedies available under OP 866.1, but also whether those remedies were "available" to

Johns. The court's September 11, 2020 Memorandum Opinion concluded, as Judge Ballou notes, that "it is undisputed that Johns did *not* fully and properly exhaust any of his claims. He does not contend, for example, that any of his grievances were accepted or that he appealed through Level II or III the denial of any grievance." (ECF No. 58 at 13 (emphasis added).) The reason Johns did not exhaust his remedies, he alleges, is because he was placed on a 90-day "grievance limitation" which limited him to filing one informal complaint and one grievance per week. (ECF No. 48-4 at 28.) But grievance limitations and associated actions of the corrections officers did not frustrate Johns's ability to seek administrative relief.

The incident giving rise to this action occurred on April 13, 2019. (*See* ECF No. 88 at 2–3.) Johns did not submit any informal complaints or grievances related to the incident until April 21, 2019. On that day, Johns submitted at least three informal complaints related to the April 13 incident.[4] (*See* Compl. [ECF No. 7] ¶¶ 22, 23, 27.) The April 21 complaints were received on April 24 and were deemed filed as of that date. (Evid. Hr'g Tr. 56.) Johns was placed on grievance limitation on April 22, 2019. (Compl. ¶ 21.) The grievance limitation was set to last for 90 days, during which time Johns was limited to filing one informal complaint and one grievance per week. (ECF No. 48-4 at 28.) Johns was informed that any excess filings would be returned to him. During the evidentiary hearing conducted by the Judge Ballou, Grievance Coordinator Trapp stated that the "limitation week"—that is, the seven-day period dictating Johns's window for submitting a weekly grievance—began on the day the limitation took effect, April 22. (Evid. Hr'g Tr. 36–37.)

---

[4] As noted in Magistrate Judge Ballou's Report and Recommendation, Johns avers that he actually submitted four informal complaints on April 21, with the fourth being related to Johns's allegedly stolen earbuds. (*See* ECF No. 88 at 6 n.3.)

On April 24, 2019, the grievance department received Johns's multiple informal complaints. Pursuant to processes embedded at Red Onion State Prison ("Red Onion"), the grievance department returned each of Johns's informal complaints dated April 21, with a note stating that the inmate should choose which one of the informal complaints he would like processed. (*Id.* at 57.) Grievance Coordinator Trapp testified that Johns would have been able to re-submit all of the claims related to the April 13 incident together in one consolidated complaint, because they represented "one instance." (*Id.* at 50.) But Johns does not assert, must less show, that he ever resubmitted *any* of those grievances or filed any new grievances concerning the issues in this complaint at Red Onion prior to filing this action.

Instead, Johns began—on his own volition and outside of VDOC policy—challenging the rejected informal complaints by sending the rejected filings to the Regional Ombudsman, the Regional Administrator, and the Facility Unit Head. (*See* Compl. ¶¶ 25, 28.) In effect, Johns bypassed the normal procedures in favor of immediate review by various members of higher-level reviewing authorities in contravention of the applicable VDOC policy. All the while, Johns neglected to re-submit his informal complaints directly to the Red Onion staff, which would have been the proper course of action.

Johns counters that, on April 28, 2019, he filed four regular grievances addressing the "same issues" that he had raised in the April 21 informal complaints. (Pl. Decl. ¶ 9.) Johns asserts that the grievances were returned to him on April 30 and that the back side of the regular grievances indicated they were rejected because Johns "had not used the informal process to resolve [the] complaint[s]." (ECF No. 48 at 2.) Again, Johns took matters into his own hands, forwarding the unprocessed grievances to higher-level authorities on the theory

that he was entitled to further review. (Pl. Decl. ¶ 11, 12.)

Nevertheless, Johns claims that, throughout this period, the grievance procedures were unavailable to him because the grievance department refused to process his informal complaints and grievances. (Compl. ¶ 21.) But the record indicates that Johns failed to re-submit his informal complaints to the Red Onion staff after his April 21 informal complaints were returned. It was Johns's failure to re-submit, and not the grievance limitation itself, which is to blame for the administrative default. A grievance limitation alone does not make administrative remedies unavailable. *See, e.g., Moore v. Bennette*, 517 F.3d 717, 721, 730 (4th Cir. 2008) (affirming district court's decision that plaintiff had failed to exhaust his administrative remedies where plaintiff could only have one active grievance at a time and plaintiff had "no excuse for not resubmitting" a grievance after the completion of another grievance); *see also Bryan v. S.C. Dep't of Corr.*, No. 4:08-cv-1590-TLW-TER, 2009 WL 702864, at *3 (D.S.C. Mar. 16, 2009) ("The fact that a grievance was unprocessed, without more, is insufficient to show that [prison officials] prevented [a prisoner] from exhausting his administrative remedies.").

Because the record is clear that Johns's failure to follow the proscribed procedure and *not* the procedure or Red Onion staff is to blame for his failure to exhaust his administrative remedies, Johns's objections will be overruled and the Report and Recommendation will be adopted in its entirety.

### III. CONCLUSION

For the foregoing reasons, the court finds that Johns failed to exhaust his available administrative remedies. Accordingly, the court will adopt Judge Ballou's Report and Recommendation and dismiss this action.

The Clerk is directed to forward copies of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 2nd day of February, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE